UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**DPR CONSTRUCTION, INC.,**

    Plaintiff,

v.                                                                   Case No.  8:03-cv-2050-T-30EAJ

**REES ASSOCIATES, INC.,**

    Defendant.
_____/

## ORDER

THIS CAUSE comes before the Court upon Defendant Rees Associates, Inc.'s Dispositive Amended Motion for Summary Judgment and Amended Alternative Motion for Partial Summary Judgment (Dkt. # 42), Defendant Rees Associates, Inc.'s Amended Memorandum of Law in Support of Amended Dispositive Motion for Summary Judgment and Amended Alternative Motion for Partial Summary Judgment (Dkt. # 43), and the Opposition of Plaintiff DPR Construction, Inc. to Amended Motion for Summary Judgment and Amended Alternative Motion for Partial Summary Judgment of Defendant Rees Associates, Inc. (Dkt. # 45).  The Court, having considered the motion and having been otherwise fully advised, finds that the motion should be denied.

### FACTUAL BACKGROUND

In 1997, Media General, Inc. ("Media General") contracted with Plaintiff DPR Construction, Inc. ("DPR") to design and construct the WFLA-TV/Tampa Tribune building

("WFLA Building") on the Hillsborough River in Tampa, Florida.  DPR and Media General entered into a Design-Build Agreement with an effective date of January 1, 1998.  DPR and Media General agreed that DPR would subcontract the design of the building to Defendant Rees Associates, Inc. and the construction of the building to Beers-Skanska, Inc.[1]

The WFLA Building was completed on December 15, 1999.  Beginning in the fall of 2001, water leaks began appearing in the building following rainstorms.  In June of 2003, Media General informed DPR that it had discovered mold damage inside the WFLA Building that was a result of the water intrusion.

Media General retained the engineering and architecture firm McKinney and Company to determine the cause of the leakage and to determine an appropriate remedy.  McKinney and Company concluded that the primary cause of the water intrusion was cracks and unsealed cold joints in the concrete exterior walls.  McKinney and Company's report attributed the cause of these cracks to "restrained shrinkage" and noted that the reinforcing in the concrete walls was inadequate to limit the widths of the cracks.  McKinney and Company's recommended solution was to apply a reinforced elastomeric coating over the building's exterior.

Media General demanded that DPR repair the WFLA building to eliminate the water infiltration. Medial General also demanded that DPR correct the subsequent mold problems.

---

[1] Defendant Beers-Skanska, Inc. previously reached a settlement with Plaintiff and is no longer a party to this action.

DPR alleges that it undertook the recommended remedial measures at a cost of more than $2 million.

DPR now seeks to recover those costs from Rees. Count I of DPR's Complaint asserts a cause of action for breach of contract against Rees, Count III seeks common law indemnity from Rees, and Count IV alleges professional negligence against Rees.[2]

Rees has moved for summary judgement against DPR on the grounds that DPR's claims are barred by the Design-Build Agreement and that DPR is not entitled to common law indemnity because it is not wholly without fault.

## SUMMARY JUDGMENT STANDARD

Motions for summary judgment should only be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)(emphasis in original). The substantive law applicable to the claimed causes of action will identify which facts are material. Id. Throughout this analysis, the judge must examine

---

[2] Count II was directed solely at Beers and is therefore now moot.

the evidence in the light most favorable to the non-movant and draw all justifiable inferences in her favor. Id. at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. Celotex, 477 U.S. at 324. The evidence must be significantly probative to support the claims. Anderson, 477 U.S. at 248-49 (1986).

This Court may not decide a genuine factual dispute at the summary judgment stage. Fernandez v. Bankers Nat'l Life Ins. Co., 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." Warrior Tombigbee Transp. Co. v. M/V Nan Fung, 695 F.2d 1294, 1296 (11th Cir.1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 248; Hoffman v. Allied Corp., 912 F.2d 1379 (11th Cir. 1990). However, there must exist a conflict in substantial evidence to pose a jury question. Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989).

**DISCUSSION**

Rees' has moved for summary judgment on the grounds that "when parties to a contract agree that one party is contractually required to provide insurance protection for the other party (or parties) an action cannot be maintained against a party that would have

benefitted from the insurance had it been obtained as required." Rees argues that pursuant to the Design-Build Agreement, Media General was required to obtain property insurance that would protect against losses, including, but not limited to, "damage resulting from defective design, workmanship, or material." <u>See</u> Design Built Agreement, § 11.5.1. Rees is apparently arguing that DPR's claims are barred under the theory that an insurer does not have the right to maintain a subrogation action against its own insured.

In support of its theory, Rees cites to <u>Smith v. Ryan</u>, 142 So.2d 139 (Fla. 2d DCA 1962), and <u>Dyson & Co. v. Flood Engineers</u>, 523 So.2d 756 (Fla. 1st DCA 1988). Rees argues that as in both <u>Smith</u> and <u>Dyson & Co.</u>, the parties "covered" by the Design-Build Agreement are protected for damages due to "perils" covered under the contractually-required property insurance (e.g. damage resulting from "defective design, workmanship, or material.").

However, both <u>Smith</u> and <u>Dyson & Co</u>. are distinguishable from the present action. In <u>Smith</u> and <u>Dyson & Co.</u>, the plaintiffs failed to obtain insurance naming the contractor as an insured as required by the contract. In <u>Smith</u>, the court held that the owner's failure to procure the contractually mandated insurance naming the contractor as an insured resulted in the owner becoming the insurer and made her liable for her own damages. <u>Smith</u>, 142 So.2d at 141. The court noted that the legal prohibition against an insurer maintaining a subrogation suit against its own insured barred the owner's (as the de facto insurer) action against the contractor (the de facto insured). <u>Smith</u>, 142 So.2d at 141.

Similarly, in Dyson & Co., the court observed that had Plaintiff Dyson & Co. insured Defendant Flood Engineers under the builder's risk policy as required by the contract, Dyson & Co. and its insurer would have been precluded from maintaining a subrogation suit against Flood Engineers. Dyson & Co., 523 So.2d 756, 758 (citing Smith v. Ryan, 142 So.2d 139 (Fla. 2d DCA 1962)(insurer does not generally have the right to maintain a subrogation suit against its own insured)).

In this case, Media General did in fact obtain the required insurance which insured both DPR and Rees. Therefore, the situation in Smith, where a party's failure to obtain the proper insurance results in the party becoming the de facto insurer, is not present here. Moreover, there has been no insurance claim made by any party in this case and no party has received any insurance payout.

More important, unlike Smith and Dyson & Co., where the losses occurred during the actual construction of the project, the damage to the WFLA Building occurred several years after work was completed. Section 11.5.1 required Media General to obtain property insurance only for the length of the project.[3] Media General's obligation to obtain insurance for the project ended with the completion of the WFLA Building on December 15, 1999. The water damage to the WFLA Building occurred well after the expiration of the construction project and the corresponding insurance requirement. Therefore, Rees and DPR

---

[3] As the Florida Supreme Court has observed, this type of "[b]uilder's risk insurance is a type of property insurance coverage, not liability insurance or warranty coverage." Swire Pacific Holdings, Inc. v. Zurich Ins. Co., 845 So.2d 161, 165 (Fla. 2003).

were no longer co-insureds under any applicable policy of insurance and DPR is not barred from maintaining this action against Rees.

## COUNT III

In the alternative to its motion for summary judgment, Rees has moved for partial summary judgment on Count III of the Complaint. Count III asserts a cause of action for common law indemnity. To successfully assert its claim for common law indemnity, DPR must prove (1) that it was wholly without fault and that Rees was negligent, and (2) that DPR was obligated to repair the WFLA Building only because of some vicarious, constructive, derivative or technical liability. See Gate Lands Co. v. Old Ponte Vedra Beach Condominium, 715 So.2d 1132, 1134 (Fla. 5th DCA 1998). Rees argues that DPR is not entitled to common law indemnity because DPR, as a Florida general contractor, is directly responsible for supervising all of the construction work on the project, and therefore cannot be "wholly without fault" for any construction or design defects. DPR's response is that pursuant to its contract with Rees, it subcontracted full responsibility for the design of the WFLA Building to Rees. The Court finds that the issue of whether DPR actively supervised the job presents a question of fact for the jury at trial.

It is therefore ORDERED AND ADJUDGED that:

1. Defendant Rees Associates, Inc.'s Dispositive Amended Motion for Summary Judgment and Amended Alternative Motion for Partial Summary Judgment (Dkt. # 42) is DENIED.

**DONE** and **ORDERED** in Tampa, Florida on August 11, 2005.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Even\2003\03-cv-2050.msj.wpd